UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


JIMMIE D. O'NEILL                                                                    PLAINTIFF

VERSUS                                              CIVIL ACTION NO. 1:12CV157-HSO-RHW

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION                  DEFENDANT


**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

Jimmie D. O'Neill filed a *pro se* [1] complaint appealing the unfavorable decision of the

Commissioner of the Social Security Administration (SSA).  Currently before the Court is

O'Neill's [7] Memorandum in Support of [1] Complaint, in which he requests that this Court

reverse the decision of the Commissioner and award him social security disability benefits.  Also

before the Court is the Commissioner's [8] Memorandum in Opposition, asking that the Court

affirm the decision to deny disability benefits.

O'Neill filed an application for social security disability and disability insurance benefits

on March 12, 2008.  He alleged June 1, 2000, as the onset of disability date.  The SSA denied his

application at the initial level and on request for reconsideration.  O'Neill requested and received

a hearing before an Administrative Law Judge (ALJ).  The ALJ conducted the hearing on

November 18, 2009.  The ALJ then issued a decision on January 15, 2010, finding that O'Neill

was not disabled.  The Appeals Council remanded the case for further consideration.  The ALJ

conducted an additional hearing on October 19, 2011.  In a decision dated November 14, 2011,

the ALJ again found that O'Neill was not disabled.  O'Neill filed an appeal with the Appeals

Council.  As part of his appeal, he submitted a letter from Dr. Timothy Jackson dated March 7,

2012.  Dr. Jackson's letter was not part of the record before the ALJ.  The Appeals Council

considered this new evidence and concluded that it did not provide a basis for changing the ALJ's decision.

O'Neill alleges that he has been disabled since June 1, 2000, due to degenerative disc disease, severe arthritis, and depression. His past relevant work includes body shop automotive worker and realtor. The medical record indicates that O'Neill suffers from degenerative disc disease. The ALJ found that O'Neill suffered from the severe impairment of abnormalities of the spine, but that his condition did not meet the criteria for listing 1.04 (disorders of the spine). The ALJ did not find severe impairments in connection with O'Neill's depression and obesity. The ALJ further concluded that O'Neill retained the residual functional capacity to perform light work, as defined by the Social Security regulations, but with the following exceptions: needs to alternate sitting and standing at will; can occasionally balance, stoop, kneel, crouch, and crawl; and cannot climb ladders or perform overhead work. Based on these limitations and relying on the testimony of a vocational expert, the ALJ concluded that O'Neill acquired transferrable skills from his past relevant work as a realtor that would permit him to work as a leasing agent/rental agent. Accordingly, the ALJ determined that O'Neill is not disabled.

### Issues

It is difficult to discern the precise points of error raised by O'Neill. In his memorandum, O'Neill listed the following "Statement of the Issue": (1) Did claimant provide proof of an impairment with strong emphasis on listing 1.04, disease of the spine? (2) Do the symptoms of spinal stenosis correlate with Plaintiff's testimony? (3) Was the plaintiff's testimony regarding pain level and limitations credible? (4) Can a physician evaluate someone's physical limitations by documents only? and (5) Should the ALJ have continued his analysis to phase five of the

evaluation process when the Plaintiff had proven disability?  Doc. [7] at 3.

Upon review of O'Neill's complaint and memorandum, the undersigned liberally construes the pleadings to assert the following points of error:  (1) whether substantial evidence supported the ALJ's finding that O'Neill did not meet the criteria for listing 1.04, specifically in light of Dr. Timothy Jackson's March 7, 2012, letter;  (2) whether the ALJ overlooked medical records from previous doctors;  (3) whether the ALJ failed to evaluate properly O'Neill's subjective complaints of pain and its limiting effects on his physical activities;  (4) whether the ALJ erred by considering the report of physicians (Dr. Tapley and Dr. Hand) who did not conduct physical examinations of O'Neill;  and (5) whether substantial evidence supported the ALJ's finding that O'Neill could perform work as a leasing agent/rental agent.

## Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g).  This standard requires supporting evidence that is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the

[Commissioner], even if the evidence preponderates against the [Commissioner's] decision."

*Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the

[Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v.*

*Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's

decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal

conclusions if they are within a permissible meaning of the statutory or regulatory language.

*Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable

impairment that has prevented the claimant from engaging in substantial gainful employment. 42

U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA)

utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R.

§ 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he

finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a

severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of

the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from

performing any past relevant work; and (5) the impairment prevents the claimant's ability to

adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but

the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th

Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the

SSA must demonstrate that the claimant can perform another occupation that exists in significant

numbers in the national economy. The burden then shifts back to the claimant to establish that

he cannot perform this alternative employment. *Id*.

**Listing 1.04**

O'Neill argues that the ALJ erred in finding that his impairment did not meet the criteria for listing 1.04. At step three of the sequential evaluation process, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals the criteria of one of the listed impairments. Listing 1.04 requires, in relevant part, a spinal disorder, such as herniated disc, degenerative disc disease or stenosis resulting in compromise of a nerve root with: (1) evidence of nerve root compression characterized by neuro-anatomic pain distribution, limited spinal motion, motor loss with sensory or reflex loss, and if involving the lower back, positive straight-leg raise tests sitting and supine; (2) spinal arachoiditis manifested by severe burning or painful dysesthesia; or (3) lumbar spinal stenosis causing pseudoclaudication (limping or lameness) established by appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04(A)-(C). O'Neill has established the existence of degenerative disc disease; however, the ALJ concluded that he did not satisfy the other criteria under listing 1.04.

The ALJ is required to discuss the evidence offered in support of the claim for disability and to explain why the claimant was found not to be disabled at step three. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). In this case, the ALJ specifically considered listing 1.04 and concluded that "there is no evidence of cord or nerve root compression and no positive findings in terms of reflex or sensory changes. The claimant is neurologically intact." Doc. [6-1] at 28. In support of this opinion, the ALJ noted that the Disability Determination Service medical

examiners concluded that no listing has been met or equaled. *Id.* When evaluating O'Neill's

back condition, the ALJ also considered the opinion of Dr. Steven M. Schepens, who examined

O'Neill on May 14, 2009. *Id.* at 27. As noted in the ALJ's decision, Dr. Schepens reported that

O'Neill denied loss of sensation and loss of function. *Id.* According to Dr. Schepens, O'Neill

had a full range of motion in the neck and lumbar spine and extremities. *Id.* O'Neill has failed to

identify any medical evidence presented to the ALJ and that would support a finding that his

symptoms met the criteria for listing 1.04.

In his memorandum, O'Neill argues that the SSA had not received the report from a 2001

MRI, which would have demonstrated spinal stenosis. Contrary to O'Neill's argument, the 2001

MRI was part of the administrative record at the time that the ALJ rendered his decision. In fact

the ALJ noted in his decision that an MRI was performed in October 2001, that showed

multilevel moderate disc space narrowing throughout the lumbar spine with endplate sclerosis

and anterior ostephyte formation. [6-1] at 27. The ALJ cited to this MRI report, which appears

as exhibit 1F in the administrative record. *See* doc. [6-4] at 25-28.

In support of his argument regarding listing 1.04, O'Neill relies on a letter from Dr.

Timothy Jackson, a board certified orthopedist, dated March 7, 2012. [6-4] at 102. Dr. Jackson

indicates that he examined O'Neill for low back pain and opined that O'Neill presented symptoms

"consistent with nerve root compression." Moreover, Dr. Jackson stated that the October 23,

2001, MRI report confirmed spinal stenosis, which correlated well with Dr. Jackson's physical

findings. Dr. Jackson concluded that O'Neill meets the criteria for the impairment at listing 1.04.

*Id.*

The ALJ did not consider Dr. Jackson's letter because it post-dates the ALJ's decision. It

simply was not part of the record at the time the ALJ rendered his decision. However, the letter was presented to the Appeals Council. This Court is required to review additional information that a claimant submits to the Appeals Council after the ALJ has reached a decision. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337-38 (5th Cir. 2005). When additional evidence is presented while the case is pending review by the Appeals Council, the district court "should review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." *Higginbotham v. Barnhart*, 163 Fed.Appx. 279, 281 (5th Cir. 2006).

There was substantial evidence in the record supporting the ALJ's decision with respect to listing 1.04. As mentioned earlier, the ALJ relied on the findings of the Disability Determination Service medical examiners and Dr. Schepens when evaluating the severity of O'Neill's back condition. The undersigned finds that Dr. Jackson's letter does not justify reversal. The Appeals Council considered Dr. Jackson's letter and concluded that it "does not provide a basis for changing the Administrative Law Judge's decision." Doc. [6-1] at 4-5. The Appeals Council did not provide any specific, meaningful review of Dr. Jackson's letter, but nevertheless did consider the letter and incorporated it into the administrative record.

The undersigned also concludes that Dr. Jackson's letter is not material and does not justify reversal because it does not appear to relate to the time period under consideration. *See Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001). Although the record does not indicate when Dr. Jackson examined O'Neill, presumably it occurred somewhere in the time frame of November 2011 (the date of the ALJs decision) and March 2012 (the date of the letter). Whether O'Neill may have presented with symptoms of nerve root compression in the time frame of

November 2011 to March 2012, is not probative of whether O'Neill had nerve root compression

and therefore met the criteria for listing 1.04 from June 1, 2000 (the alleged date for onset of

disability), through November 14, 2011 (the date of the ALJ's opinion). Dr. Jackson's letter

speaks to O'Neill's current physical condition (as of March 2012) and does not address the time

frame that was under consideration by the ALJ. In fact, O'Neill acknowledges that he only

contacted Dr. Jackson because his "condition had gotten worse" since the date of his application

for disability benefits. *See* doc. [7-1] at 8. Moreover, Dr. Jackson's one-page letter addressed

"To Whom it May Concern" fails to provide any specific details about the nature of the treatment

relationship, when it occurred, and over what period of time. The letter is likewise vague as to

any clinical or laboratory tests that Dr. Jackson performed. Given the overall dearth of evidence

for disability from 2000 through 2011, this eleventh hour letter does not change the fact that

substantial evidence still supports the ALJ's conclusion that O'Neill failed to meet the criteria for

listing 1.04.

### Other Medical Records

O'Neill argues that the ALJ overlooked other medical records when evaluating his claim.

Specifically, he points to the records of Dr. John Dallman, Dr. Gary Goldstein, Dr. Schepens, Dr.

Joel Laughlin, and Dr. Jennifer Nuse. O'Neill concedes that the medical records are in the

record, but argues that the ALJ referred only to one medical record in his decision.

The ALJ discussed in some detail the records of Dr. Schepens. O'Neill is correct that the

ALJ did not reference any of the other physicians in the decision; however, O'Neill fails to

attribute any significance to their opinions as it relates to his claim for disability. He merely

points out the Dr. Dallman made the initial diagnosis of spinal stenosis. However, the MRI

report, which was a part of the record, also indicates that O'Neill suffers from spinal stenosis. The ALJ concluded that O'Neill suffered from a severe impairment of the spine based in part on the MRI report and Dr. Schepens opinion. O'Neill fails to identify any medical evidence that was presented to the ALJ and that would support a finding of disability. He simply fails to explain how the opinions of the other physicians would undermine the ALJ's conclusions.

**Subjective Complaints of Pain**

Throughout his memorandum, O'Neill asserts that his pain is more limiting than what the ALJ found. In essence, O'Neill is arguing that his limitations are greater than those attributed by the ALJ, and that the ALJ failed to properly evaluate his subjective complaints of pain.

In assessing Plaintiff's claims of disability, the ALJ must consider the claimant's subjective complaints of pain, but also is allowed to consider other medical evidence in determining the extent of the pain. *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). The ALJ is entitled to considerable deference when assessing the disabling nature of claimant's pain, given the subjective nature of such complaints. *See Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Whether a claimant is able to work despite some pain is within the province of the Commissioner and should be upheld if supported by substantial evidence. *Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983).

The ALJ found that O'Neill has the residual functional capacity to perform light work, except that he needs to alternate sitting and standing at will; can occasionally balance, stoop, kneel, crouch, and crawl; and cannot climb ladders or perform overhead work. In reaching this conclusion, the ALJ found that O'Neill's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the

residual functional capacity assessment.

There is substantial evidence supporting the ALJ's decision. The ALJ noted that O'Neill does not take an inordinate amount of pain medication; he has not sought emergency room care on a frequent basis; and he has not been hospitalized for any duration. [6-1] at 29-30. The ALJ noted that no doctors have assigned any restrictions or limitations related to O'Neill's alleged impairments. *Id.* The ALJ found that none of the treating physician opinions indicated that O'Neill was disabled. *Id.* The ALJ further gave some weight to the Disability Determination Service medical assessments when reaching this conclusion, specifically Dr. William Hand and Dr. Thomas Tapley. *Id.* at 30. Dr. Hand concluded that O'Neill could perform light work. Dr. Tapley likewise attributed O'Neill with a residual functional capacity consistent with light work.

### Reports of Non-Examining Physicians

O'Neill suggests that the ALJ erred because he relied on the reports of non-examining physicians. Specifically, he mentioned Dr. Tapley's report. Although O'Neill does not mention Dr. Hand in his memorandum, the ALJ also relied on the report of Dr. Hand who was a reviewing, non-examining physician.

The ALJ is permitted to consider the opinions of non-examining physicians. An ALJ may properly rely on a non-examining physician's assessment when those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician. *See Carrier v. Sullivan*, 994 F.2d 243, 246 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). In this case, the ALJ gave "some weight" to the opinions of the non-examining physicians.

As discussed previously, there was substantial evidence supporting the ALJ's conclusions

regarding the nature and severity of O'Neill's impairment, as well as substantial evidence

supporting the ALJ's assessment of O'Neill's residual functional capacity.  In addition, the ALJ

relied on Dr. Hand and Dr. Tapley.  Dr. Hand reviewed O'Neill's medical records and concluded

that he could do light work based on O'Neill's decreased range of motion in the lumbar spine,

back pain with straight leg raising, lack of neurologic deficit, and x-ray results.  *See* doc. [6-4] at

77-83.  Dr. Tapley described O'Neill's physical limitations based on the x-rays and clinical

findings in the medical records.  *See* doc. [6-4] at 46-53.  There was no examining physician

whose finding contradicted those of Dr. Tapley or Dr. Hand.  Hence, the ALJ did not err in

considering the opinions of Dr. Tapley and Dr. Hand.

### Ability to Work as Rental Agent

O'Neill argues that the ALJ erred when he concluded that O'Neill is capable of working

as a rental or leasing agent.  O'Neill asserts that he would need a license to perform the job of

leasing agent, except for apartment complexes, but that apartment complexes would require him

to do a lot of climbing stairs.

There is substantial evidence in the record supporting the ALJ's conclusion that O'Neill

is capable of performing light duty work.  The ALJ relied specifically on the opinions of Dr.

Schepens and the State agency physicians Dr. Hand and Dr. Tapley.  As discussed previously,

Dr. Hand and Dr. Tapley reviewed O'Neill's medical records and concluded that O'Neill could

perform light work.  Also, as discussed previously, there is substantial evidence supporting the

ALJ's credibility determination with respect to the limiting effects of O'Neill's subjective

complaints of pain.  In his decision, the ALJ failed to mention the opinion of Dr. Cobb, who

conducted a consultative examination of O'Neill.  *See* doc. [6-4] at 43-44.  However, according

to Dr. Cobb, O'Neill self-reported that he could stand for 45 minutes to an hour, walk up to a mile, sit for about 30 minutes or longer, and carry up to about 20 pounds. *Id.* at 43.

There also is substantial evidence in the record supporting the ALJ's conclusion that O'Neill is capable of performing the specific job of rental or leasing agent. The ALJ relied on O'Neill's past relevant work as a realtor to conclude that he possessed certain transferrable skills: knowledge of property, knowledge of contracts, and ability to deal with people. The ALJ further relied on the testimony of a vocational expert who stated that O'Neill could perform the work of leasing agent/rental agent. *See Carey v. Apfel*, 230 F.3d 131, 145-47 (5th Cir. 2000). O'Neill's representative argued that O'Neill could not perform work as a leasing/renting agent because his real estate license is no longer current. In response, the ALJ stated that "[t]his argument fails because the issue of licensure requirements has no bearing on whether or not claimant's acquired job skills are transferable." Doc. [6-1] at 32. Based on the foregoing, the undersigned finds that there is substantial evidence supporting the ALJ's determination.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be affirmed, and that O'Neill's request for disability benefits be denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall

file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 16th day of July, 2013.


/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE